UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL ACTION |
| versus | * | NO. 07-337 |
| AZIZI ANSARI | * | SECTION "L" |

### ORDER & REASONS

Pending before the Court is Petitioner Azizi Ansari's Motion for Reconsideration of this Court's May 18, 2020 Order denying Mr. Ansari's Motion for Compassionate Release. R. Doc. 155. The government opposes the motion. R. Doc. 162.

### I.   BACKGROUND

On November 7, 2007, Defendant Azizi Ansari pleaded guilty to a one-count Bill of Information charging him with conspiring to distribute and possess with the intent to distribute quantities of ecstasy in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C) and 846. R. Doc. 27. On February 25, 2010, Mr. Ansari was sentenced to 240 months in the custody of the Bureau of Prisons to be followed by a three-year term of supervised release. R. Doc. 93. A $100 special assessment fee was also imposed. R. Doc. 93 at 5.

### II.   PENDING MOTION

Mr. Ansari has asked this Court to reconsider its denial of his previously-filed motion for compassionate release, which was based on Mr. Ansari's failure to exhaust his administrative remedies. R. Doc. 155. In his motion for reconsideration, Mr. Ansari takes the position that he has properly exhausted his administrative remedies. R. Doc. 155 at 2. Specifically, he contends he was "mis-lead by Unit Team here at MDC Brooklyn New York that he must file with the Southern District of New York a '2241' Compassionate Release." *Id*. He also appears to suggest that he sent

1

an administrative remedy request to the warden's office which was denied on April 9, 2020. *Id*. He attaches to his motion a document that appears to be a form from the Administrative Remedy Coordinator at Brooklyn MDC rejecting his administrative remedy request, although the reasons for rejecting his request are obscured. *Id*. at 5. Additionally, he attaches a copy of a ruling from the Southern District of New York transferring Mr. Ansari's petition for a writ of habeas corpus under 28 U.S.C. § 2241 to the Eastern District of New York. *Id*. at 6.

The government filed a response, indicating that counsel for the Bureau of Prisons confirmed that Mr. Ansari had not made an internal request to the warden of MDC Brooklyn for compassionate release. R. Doc. 157 at 1.

Mr. Ansari sent the Court a subsequent communication, which the Court construes as a reply to the government's opposition. R. Doc. 158. The document, titled "'Proof' of 30 day Clock," explains that Mr. Ansari did, in fact, request compassionate release in the appropriate manner. Mr. Ansari attaches what appears to be a second letter addressed to the warden. Specifically, the letter appears to request that the warden grant him home confinement and release his medical records to this Court and a federal judge in the Southern District of New York. *Id*. at 5. It appears as though this request was denied by the Administrative Remedy Coordinator on May 7, 2020. *Id*. at 6.

At the Court's order, the government responded to Mr. Ansari's reply, again asserting that Mr. Ansari had not presented an internal request for compassionate release to the warden. In addition, the government challenges the merits of Mr. Ansari's motion. R. Doc. 162.

In response to the government's sur-reply, Mr. Ansari filed his own sur-reply, explaining that he requested relief from the warden on April 9, 2020 and April 29, 2020, and was denied on both occasions. R. Doc. 164 at 1. He also argues he is no longer a danger to society because he has a single prior conviction involving violence for which he served his time. *Id*. at 2. Mr. Ansari

further contends the government has committed fraud by continuing to deny that Mr. Ansari ever requested relief from the warden. *Id*. Lastly, Mr. Ansari argues that despite the government's assertion to the contrary, MDC Brooklyn is failing in protecting inmates from the virus. *Id*. at 5.

Unprompted, Mr. Ansari sent the Court an additional sur-reply in which he contends he has presented the warden of MDC Brooklyn with multiple requests for compassionate release. He attaches the following four exhibits: (1) a request for release under the CARES Act in light of defendant's diagnosis with Valley Fever, dated April 7, 2020; (2) a request that the warden grant home confinement and release defendant's medical records to the Court, dated April 29, 2020; (3) an appeal of the warden's denial of home confinement, dated June 11, 2020; and (4) a request that the warden provide proof that defendant's prior requests for compassionate release were denied, dated July 3, 2020.

### III. LAW & DISCUSSION

#### A. Motion for Reconsideration

"While motions for reconsideration in criminal actions 'are nowhere explicitly authorized in the Federal Rules of Criminal Procedure, they are a recognized legitimate procedural device.'" *United States v. Cotto*, No. CV 16-36, 2020 WL 3832809, at *1 (E.D. La. July 8, 2020) (quoting *United States v. Lewis*, 921 F.2d 563, 564 (5th Cir. 1991)). Because this motion was filed within twenty-eight days after entry of the judgment from which relief is sought, the Court construes this motion as seeking reconsideration pursuant to Rule 59(e). *See id*.

A motion for reconsideration under Rule 59(e) "calls into question the correctness of a judgment." *Templet v. HydroChem, Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (citation omitted). A Rule 59(e) motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Id*. Instead, a Rule 59(e)

3

motion merely allows "a party to correct manifest errors of law or fact or to present newly discovered evidence." *Id*. Rule 59(e) also allows a party to bring an intervening change in the controlling law to the Court's attention. *See Schiller v. Physicians Res. Group, Inc.*, 342 F.3d 563, 567–68 (5th Cir. 2003). Rule 59(e) relief is an extraordinary remedy and should be used sparingly. *See Templet*, 367 F.3d at 479.

### B. Motion for Compassionate Release

Although a court is generally prohibited from modifying an already-imposed term of imprisonment, 18 U.S.C. § 3582(c) allows a court to reduce a sentence if, after considering the applicable § 3553 factors, "extraordinary and compelling reasons exist" and the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The statute also imposes certain procedural requirements. Specifically, § 3582(c)(1)(A) allows an inmate to seek compassionate release from the district court provided he has first filed an internal request to the warden of his facility for a sentence reduction and either (1) "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons" to act on his behalf; or (2) waited thirty days from the warden's receipt of such a request. *Id*.

In sum, courts routinely consider three requirements when determining whether compassionate release is appropriate: (1) whether the defendant has exhausted administrative remedies; (2) whether extraordinary and compelling reasons exist; and (3) whether defendant poses a danger to the safety of any other person or society. The defendant bears the burden of demonstrating that these elements are satisfied. *United States v. Davis*, No. CR 07-357, 2020 WL 2838588, at *2 (E.D. La. June 1, 2020). The Court considers each in turn.

The Court must first be satisfied that Mr. Ansari has exhausted his administrative remedies or waited thirty days from filing a request that the warden of his facility bring a motion on his

behalf before seeking judicial relief. This Court agrees with the majority of courts in finding that the exhaustion of administrative remedies is a mandatory prerequisite to seeking judicial relief. *See, e.g.*, *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *United States v. Alam*, 960 F.3d 831, 835 (6th Cir. 2020); *United States v. Lee*, No. CR 17-204, 2020 WL 3490437, at *2 (E.D. La. June 26, 2020); *United States v. Nevers*, No. CR 16-88, 2020 WL 3077034, at *3 (E.D. La. June 10, 2020); *United States v. Zywotko*, No. 219CR113FTM60NPM, 2020 WL 1492900, at *1 (M.D. Fla. Mar. 27, 2020); *United States v. James*, CM/ECF No. 13-85, R. Doc. 95 at 12 (E.D. La. Apr. 16, 2020); *United States v. Celestine*, CM/ECF No. 18-83, R. Doc. 133 at 3 (E.D. La. Apr. 13, 2020); *United States v. Eberhart*, No. 13-CR-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020).

Mr. Ansari's original motion for compassionate release was denied because he had not established that he had exhausted his administrative remedies or waited the requisite thirty days. Mr. Ansari now seeks reconsideration of that order on the grounds that he has on two different occasions requested compassionate relief from the warden of his facility. The government maintains that Mr. Ansari has not properly exhausted his administrative remedies because he has not specifically asked the warden of Brooklyn MDC to bring a motion for compassionate release on his behalf.

Mr. Ansari has submitted multiple documents as proof of exhaustion. First, Mr. Ansari points to a letter dated April 7, 2020, in which he clearly asks the warden to grant him relief under the CARES Act in light of the ongoing pandemic. R. Doc. 166 at 5. Mr. Ansari explains that he is a prime candidate for relief because he is non-violent offender who suffers from a respiratory disease that has weakened his immune system. In an attachment, he asks the warden to "release [him] to home confinement [or] [make a] recommendation to the Court." *Id.* at 7. The letter was

received by the warden on April 9, 2020, and Mr. Ansari received a letter from the Administrative Remedy Coordinator rejecting his request because "[t]he administrative remedy process is no longer used to request home confinement." Mr. Ansari was instructed to contact his unit manager. *Id*. at 6.

Mr. Ansari also points to the letter written on April 29, 2020, referencing the rejection of his earlier request and asking the warden to grant him home confinement and release his medical records to the Court. *Id*. at 9. On May 7, 2020, his request was rejected by the Administrative Remedy Coordinator for failure to attach a copy of the warden's denial letter. Mr. Ansari was told he could resubmit his request within five days. *Id*. at 8.

On June 11, 2020, Mr. Ansari wrote another letter in which he indicates that he is appealing the warden's denial of home confinement. *Id*. at 12. Mr. Ansari indicates that this is his second request. On June 15, 2020, Mr. Ansari received a letter from the Administrative Remedy Coordinator rejecting his request on the grounds that his appeal was untimely because it was not filed within twenty days of the initial denial. *Id*. at 10. On July 3, 2020, Mr. Ansari sent another letter requesting that the warden provide proof that Mr. Ansari made two internal requests for compassionate release that were denied. *Id*. at 4.

The operative question is, therefore, whether any of Mr. Ansari's letters to the warden constitutes requests for a sentence modification under 18 U.S.C. § 3582(c)(1)(A). Notably, Mr. Ansari's letters dated April 7, 2020 and April 29, 2020 indicate that he seeks home confinement under the CARES Act. The letter dated June 11, 2020 indicates that Mr. Ansari appeals the warden's denial of this request. His letter dated July 3, 2020, references his two prior requests for compassionate release.

At the outset, the Court notes that requests for home confinement under the CARES Act

and requests for compassionate release under § 3582(c) are not the same thing. Most courts have held that requests for home confinement under the CARES Act do not constitute requests for compassionate release, which are governed by a different statutory authority. *See, e.g.*, *United States v. Brown*, No. CR 13-286, 2020 WL 3292874, at *2 (E.D. La. June 18, 2020) (holding that that administrative remedies had not been exhausted where the defendant had emailed the warden inquiring into his eligibility for relief under the CARES Act because compassionate release is not governed by the CARES Act)*; United States v. Black*, No. 2:12-CR-263-3, 2020 WL 2213892, at *2 (S.D. Ohio May 7, 2020) (denying compassionate relief on administrative grounds where defendant had petitioned the warden for home confinement, not release due to extraordinary and compelling reasons under § 3582(c)(1)(A)(i); *United States v. Allen*, 2020 WL 2199626, at *1 (S.D. Ga. May 6, 2020) ("It is important to understand that a request for home confinement under the CARES Act is different than a Reduction-In-Sentence (RIS) request based upon compassionate release."). A few courts, however, guided by policy principles, have held that such requests are sufficient if the warden "would have understood . . . [the] request to encompass a request for compassionate release even though it only specifically referred to the CARES Act." *United States v. Carr*, No. 1:13CR00034-001, 2020 WL 2847633, at *3 (W.D. Va. June 2, 2020), *reconsideration denied*, No. 1:13CR00034-001, 2020 WL 3566845 (W.D. Va. July 1, 2020). *Compare United States v. Black*, No. 2:12-CR-263-3, 2020 WL 2213892, at *2 (S.D. Ohio May 7, 2020) (denying compassionate relief on administrative grounds where defendant had petitioned the warden for home confinement, not release due to extraordinary and compelling reasons under § 3582(c)(1)(A)(i), *with United States v. James*, No. 15-CR-00255 (SRN), 2020 WL 3567835, at *4 (D. Minn. July 1, 2020) (holding that motion for compassionate release was properly before the court because more than thirty days had passed since the defendant presented the warden of his

facility with a request for home confinement).

Nowhere in the record can the Court find evidence that Mr. Ansari ever asked the warden to bring a motion for compassionate release on his behalf, and the government avers that no such request was ever made. R. Doc. 162 at 22. Nevertheless, the Court is inclined to construe Mr. Ansari's April 29, 2020 letter as a request for compassionate release. Even though that letter requested home confinement, the May 7, 2020 rejection letter from the Administrative Remedy Coordinator indicated that the subject of the communication was a "Reduction-In-Sentence Request."[1] R. Doc. 166 at 8. Similarly, the June 15, 2020 letter, rejecting Mr. Ansari's appeal, also references his "Reduction-In-Sentence Request." *Id*. at 10. Based on the language used by the Administrative Remedy Coordinator in the initial rejection letter and rejection of the appeal, at least someone within the BOP received Mr. Ansari's letters and construed them as request for a reduction in sentence under § 3582(c).[2] The Court will do the same. *See James*, 2020 WL 3567835, at *4 (construing a request for home confinement as a request for compassionate release where probation construed the BOP's response to the request as a denial of compassionate release).

Assuming Mr. Ansari's April 29, 2020 letter to the warden was a request for a reduction in sentence/compassionate release, the Court nevertheless finds that he has failed to exhaust his administrative remedies as required by the statute. Specifically, § 3582(c)(1)(a) allows a defendant to bring a motion only after he has "fully exhausted all administrative rights to appeal a failure to the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request." 18 U.S.C. § 3582(c)(1)(a).

---

[1] In contrast, the Administrative Remedy Coordinator's letter in response to Mr. Ansari's April 9, 2020 request contains the subject "Other Classification Matters." R. Doc. 166 at 6.
[2] Section 3582(c) governs a court's ability to grant sentence modifications; accordingly, a request for a reduction in sentence and a request for compassionate release are subject to the same authority.

8

BOP regulations provide inmates the right to appeal denials of requests under § 3582(c)(1)(a) through the Administrative Remedy Procedure ("ARP"). 28 C.F.R. § 571.63(a). The ARP in turn provides that appeals must be received within twenty days by the Regional Director. *Id*. § 542.15. Appeals of the Regional Director's decision must be received by the General Counsel within thirty days. *Id*. Appeals to the General Counsel are final. *Id*.

Here, Mr. Ansari's April 29, 2020 request was rejected on May 7, 2020. R. Doc. 166 at 8. His response, dated June 11, 2020, was received on June 12, 2020. In the response he states, "I'm [a]ppealing the warden Edge's denial of my home confinement release." R. Doc. 166 at 12. Considering that Mr. Ansari's request was denied on May 7, 2020, any appeal must have been filed by May 27, 2020 to be considered timely.[3] Accordingly, to the extent Mr. Ansari's June 11th letter is an appeal of the May 7th rejection, the Court concludes that Mr. Ansari has not exhausted his administrative appeals at this juncture.[4]

Furthermore, even if Mr. Ansari had complied with the mandatory procedural requirements set forth in 18 U.S.C. § 3582(c)(1)(A), compassionate release would not be warranted at this time because Mr. Ansari has failed to articulate "extraordinary and compelling reasons" necessary to warrant such relief. According to the Sentencing Commission, extraordinary and compelling reasons can include an inmate's medical condition, age, family circumstances, or "other reasons."

---

[3] The Court notes that Mr. Ansari appears to have been given conflicting instructions about how to appeal the May 7, 2020 rejection. Although the 20-day window is standard BOP procedure and reflected on the "Request for Administrative Remedy" form Mr. Ansari completed on multiple occasions, the May 7, 2020 rejection notice informed him that his request was rejected for failure to attach a copy of the warden's denial letter and instructed him to resubmit the request within five days. R. Doc. 166 at 8. Although it is conceivable that this letter does not constitute a denial of his request but merely a rejection thereof based on procedural deficiencies, the Court believes receipt of the rejection letter put Mr. Ansari on notice of the next steps necessary to pursue his requested relief. Further, Mr. Ansari apparently construed the rejection notice as a denial because his June 11, 2020 letter indicates that he is "appealing the warden['s] . . . denial of my home confinement release." R. Doc. 166 at 12.

[4] Even if the Court construed Mr. Ansari's April 9, 2020 letter as a request for compassionate release and his subsequent letter April 29, 2020 letter as the appeal, his appeal would still be untimely because it was received by the BOP on May 4, 2020, more than 20 days later.

U.S.S.G. § 1B1.13. In particular, an inmate's medical condition qualifies if he suffers from a terminal illness of a serious physical or medical condition that substantially impairs his ability to provide self-care within a correctional facility and from which he is not expected to recover. *Id.* app. n. 1(a).

Mr. Ansari's request for compassionate release is premised on the ongoing global pandemic. With respect to COVID-19-releated motions, courts typically require an inmate to demonstrate "a particularized susceptibility to the disease" and "a particularized risk of contracting the disease at his prison facility." *James*, 2020 WL 3567835 (quoting *United States v. Feiling*, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) (collecting cases)). "General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13.23." *United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at *5 (M.D. La. Apr. 1, 2020) (quoting *United States v. Eberhart*, No. 13-CR-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020)). Indeed, if general concerns about COVID-19 constituted extraordinary and compelling reasons, all incarcerated individuals would qualify for compassionate release.

Here, Mr. Ansari's medical records reveal that he suffers from coccidomycosis, also known as Valley Fever, a condition for which he takes medication every day. R. Doc. 162 at 7. In his original motion for compassionate release, he explained that the illness has "weakened his immune system . . . and left him susceptible to skin rashes, fatigue, joint aches, chest pain, difficulty breathing, [and] cold sweats." R. Doc. 150 at 2. Although the CDC has not identified Valley Fever as an underlying condition that increases vulnerability to COVID-19, the Court understands that Valley Fever can be a grave illness with serious pulmonary symptoms such as a cough, difficulty

10

breathing, and chest pain. *See United States v. Reid*, No. 17-CR-00175-CRB-2, 2020 WL 2128855, at *3 (N.D. Cal. May 5, 2020) (surveying a number of sources investigating the link between pulmonary diseases and COVID-19 and noting that "the seriousness of [Valley Fever] is not lost on the Court"). Nevertheless, Mr. Ansari has not suggested that Valley Fever is a terminal condition or one that substantially diminishes his ability to provide self-care while incarcerated. Further, his medical records reveal that he takes daily medication to treat the condition, and he has not alleged or provided any evidence that the BOP is unable to provide him with the care he needs to manage his condition and maintain his health while incarcerated.

Further, even if extraordinary and compelling circumstances did exist, the Court is concerned that Mr. Ansari remains a danger to the safety of any other person or to the community. In making this inquiry, courts must consider the factors set forth in 18 U.S.C. § 3553(a), such as the nature and circumstances of the charged offense, the history and characteristic of the defendant, and the need for the sentence imposed to reflect the seriousness of the offense, have a deterrent effect, and protect the public from future crimes. 18 U.S.C. § 3553(a). Here, Mr. Ansari was charged with conspiring to possess and distribute large quantities of controlled substances, a crime for which he was sentenced to a lengthy prison term. Mr. Ansari's role in the conspiracy was significant, as was his criminal history, which included a conviction in Louisiana state court for armed robbery. The Court concludes that Mr. Ansari's role in the instant offense, combined with his history of violent crime, weigh against compassionate release.

Lastly, to the extent Mr. Ansari asks not for a sentence reduction but for release to home confinement, the Court does not have the authority to grant this request. It is well-established that the BOP has sole authority to determine an inmate's placement. *See* 18 U.S.C. § 3621(b). Although Congress expanded the BOP's authority to transfer additional defendants to home confinement

11

through the CARES Act, nothing in the CARES Act gives district courts authority over placement decisions. *See, e.g.*, *United States v. McCann*, No. CR 5:13-52, 2020 WL 1901089, at *3 (E.D. Ky. Apr. 17, 2020) (finding that "the Court has no authority under [the CARES Act] to order that a prisoner be placed on home confinement"); *United States v. Read-Forbes*, No. CR 12-20099-01-KHV, 2020 WL 1888856, at *5 (D. Kan. Apr. 16, 2020) ("While the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, the Court lacks jurisdiction to order home detention under this provision."); *United States v. Engleson*, No. 13-CR-340-3 (RJS), 2020 WL 1821797, at *1 (S.D.N.Y. Apr. 10, 2020) (recognizing that the "ultimate decision of whether to release an inmate to home confinement rests with the BOP"). The Court thus lacks the authority to order the BOP to transfer Mr. Ansari to a home confinement placement.

## IV. CONCLUSION

For the foregoing reasons.

**IT IS ORDERED** that Mr. Ansari's Motion for Reconsideration, R. Doc. 155, is **DENIED**.

New Orleans, Louisiana, this 27th day of July, 2020.

_____
Eldon E. Fallon
United States District Judge

cc:  Azizi Ansari
Metropolitan Detention Center, 30027-086
P.O. Box 329002
Brooklyn, NY 11232